C. N. NELSON LUMBER Co. *v.* TOWN OF LORAINE.

*(Circuit Court, W. D. Wisconsin. July 22, 1885.)*

1. HIGHWAY TAX—WISCONSIN TOWNS—AUTHORITY OF ELECTORS—REV. ST. WIS. 1878, §§ 776, 1240.

   The electors of a town in Wisconsin have jurisdiction to raise money to build and repair roads, but they cannot in any town in the state raise more than 15 mills on the dollar, nor in any town having less than 500 inhabitants can they raise more than $1,000, nor in any town of two congressional townships, without regard to the number of inhabitants, can they raise more than $2,000, exclusive of the mill tax authorized to be levied by the supervisors.

2. SAME—AUTHORITY OF SUPERVISORS.

   The supervisors are required by Rev. St. Wis. 1878, § 1240, whether any taxes have been voted by the electors or not, to levy a tax of from one to seven mills on the dollar, and in addition thereto to assess any further amount which may have been ordered to be assessed by the electors, not exceeding in the whole 15 mills on the dollar, provided that the amount assessed in towns of less than 500 inhabitants shall not exceed $1,000 in all, and in towns of two congressional townships $2,000, exclusive of the mill tax.

3. SAME—TAX HELD VOID.

   Where the supervisors assess a road tax in excess of $1,000 in a town of but 300 inhabitants, they exceed their authority and the tax is void.

At Law.

*N. H. Clapp* and *Fayette Marsh*, for plaintiff.

*J. N. Scarles,* for defendant.

BUNN, J. This action is brought by the plaintiff, a corporation of Minnesota, owning pine lands in this state, to recover back from the town of Loraine the sum of $547.41, paid by it to the collector of said town for a highway tax assessed upon the plaintiff's logs in 1883. The collector of taxes having seized upon certain personal property of the plaintiff to satisfy the tax, the plaintiff, under protest, paid the tax to save its property, and now brings action against the town to recover it back.

The case has previously been before the court upon a demurrer to the first and third counts of the complaint, which was sustained. See 22 FED. REP. 54. It is now submitted upon the second count, and the answer thereto, and upon certain stipulations of the attorneys for decision by the court, a jury trial having been waived. The question presented is one of law, as to whether, upon the facts alleged and the stipulation of the parties, the highway tax levied in the defendant town is valid; and this involves a construction of sections 776 and 1240 of the Revised Statutes of Wisconsin. Section 776 authorizes the qualified electors of each town, at any annual town meeting, to vote to raise money for the repair and building of roads and bridges, subject to the limitations provided in section 1240. Section 1240, as amended by chapter 163, Gen. Laws 1883, after providing that the supervisors shall assess a highway poll-tax, provides:

"(2) The residue of the highway taxes, to an amount not less than one nor more than seven mills on the dollar, shall be assessed on the valuation of real and personal property in each district; but the supervisors in the several towns in this state shall assess any amount of highway tax, additional to the amount above authorized, which shall be ordered to be assessed at the next preceding annual town meeting, not exceeding fifteen mills on the dollar of such valuation. But no town, containing a population of less than five hundred inhabitants, shall hereafter levy or collect in any one year a highway tax of more than $1,000, including the amount of money that may be voted at any special or general town meeting, and the mill tax herein authorized to be levied by the supervisors. And no town having two congressional townships or more shall levy or collect a tax, exclusive of the mill tax hereinbefore authorized, of more than two thousand dollars in any one year."

The facts are these: The town electors, at their annual town meeting, voted a highway tax of seven mills on the dollar of the assessed valuation in the town. The supervisors, under section 1240, made an assessment of 15 mills on the dollar, or eight mills in addition to the amount authorized by the electors. It is alleged in the complaint, and stipulated to by counsel, that the amount of highway tax levied in the town was $1,740; that the town was comprised of two congressional townships, and contained not more than 300 inhabitants. It is contended by plaintiff (1) that the supervisors have no authority under the law to assess any amount of highway tax without its being voted and authorized by the electors at the annual town meeting preceding the levy; (2) that in any event they can only

raise 15 mills on the valuation in all, including that voted by the electors, and that in this case they could add but seven mills to the seven mills so previously voted by the electors, making 14 mills in all; (3) that the $1,000 limitation provided in section 1240, Rev. St., as amended by chapter 163, Laws 1883, applies to this town, and that the tax is void because it exceeds this limit.

The defendant's contention is (1) that the supervisors may levy a highway tax of 15 mills in addition to what the electors previously vote, and that the electors may vote a tax of seven mills, making the limit 22 mills; (2) that the $1,000 limitation has no application to towns of two congressional townships or more.

Neither plaintiff nor defendant is wholly correct in his construction of the statute, and I think the defendant wholly wrong. It seems to me the true meaning of these statutes, taken together, is this: The electors have, by section 776, jurisdiction to raise money to build and repair roads, subject to all the limitations contained in section 1240; that is to say, they cannot, in any town in the state, raise more than 15 mills on the dollar, nor in any town having less than 500 inhabitants can they raise more than $1,000, nor in any town of two congressional townships, without regard to the number of inhabitants, can they raise more than $2,000, exclusive of the mill tax authorized to be levied by the supervisors. So much for the authority of the electors. Now as to the supervisors. By section 1240 they are not simply authorized, but required, whether any tax has been voted by the electors or not, to levy a tax of from one to seven mills on the dollar. And, in addition thereto, they are also required to assess any further amount which may have been ordered to be assessed by the electors, not exceeding in the whole 15 mills on the dollar: provided, always, that the amount assessed in towns of less than 500 inhabitants shall not exceed $1,000 in all, and in towns of two congressional townships, $2,000, exclusive of the mill tax; that is to say, the supervisors, subject to the $1,000 and $2,000 limit, shall assess at least one mill on the dollar for highway tax. They may assess seven mills on the dollar without any authority from the electors. They shall, in addition to the amount which they assess of from one to seven mills, assess any further sum voted by the electors, not exceeding in all 15 mills on the dollar.

I think the defendant's contention, that the 15-mills limitation applies to the amount which the electors have voted, and which the supervisors are authorized to add to the seven mills which they, of their own authority, have power to assess, is clearly wrong. I have no doubt this limitation applies to the entire amount to be assessed by the supervisors, including that voted by the electors. If this construction be the correct one, then the highest sum the supervisors could have assessed in this case was 14 mills on the dollar; that is, they could only add the seven mills voted by the electors to the seven mills which the statute enables the supervisors to assess on their own au-

thority. I am also clearly of the opinion that the $1,000 limitation applies to this case, and that, in assessing a road tax of $1,740 in a town of but 300 inhabitants, the supervisors exceeded their jurisdiction, and that the tax is invalid. I am the more satisfied that this is the true construction from an examination into the history of the $1,000 and $2,000 provisions severally. That of $1,000 was first adopted in 1869, in chapter 152 of section 22 of the General Laws of that year, and remained the only limitation except the 15-mills limitation until 1878, when, in the General Laws of that year, chapter 250, the $2,000 limitation was first enacted in such a form as to leave very little doubt of its meaning, in connection with the $1,000 limitation also re-enacted in the same section.

It seems very clear that from the time of its adoption in 1869 to its re-enactment in 1878 the $1,000 limitation applied to all towns in the state having less than 500 population. And it is equally apparent, I think, that the adoption of the $2,000 limitation by chapter 250, Laws 1878, does not and was not intended to change the previously well-understood meaning of the $1,000 limitation. The revisors changed the form of both provisions in the revision of 1878, but not, in my judgment, so as to alter the meaning. The various provisions of the statutes referred to, and the changes made, are too lengthy to be quoted in full, but may be easily examined by any one who may be interested in the question.

My conclusion is that the limitation of $1,000 is upon every town in the state having less than 500 inhabitants. That of $2,000 is upon every town, without regard to the number of inhabitants, having two or more congressional townships. There is another distinction; the $1,000 limitation is *inclusive* of the mill tax, while the $2,000 limitation is *exclusive* of the mill tax. Why the legislature, by the act of 1878, confined the $2,000 limitation to towns of two or more congressional townships may not be very apparent; but probably it was because of the well-known fact that almost all the old and wealthy and thickly settled towns have less than two townships, while in the north part of the state it will frequently happen that in a town of very few inhabitants, and very little wealth or improvement, there will be several congressional townships. I think it not unusual to have a town 36 miles long, with a rather sparse settlement, in but one congressional township. I have known of such towns and have heard of others. But we are not greatly concerned to find a motive for the action of the legislature in a case where it has expressed itself in language so plain as in this.

I hold the tax in question void because in excess of two of the limitations above referred to, and that the plaintiff is entitled to recover from the defendant town the amount of said tax, $528.47, with interest at 7 per cent. from the time it was paid to the collector in September, 1883.